A99A2101. RUSSELL v. BARNETT BANKS, INC. et al.
(527 SE2d 25)

BLACKBURN, Presiding Judge.

Melvin Russell appeals the trial court's grant of summary judgment to Barnett Banks, Inc. and NationsBank, N.A. (collectively the Bank), contending that the Bank, which had issued a construction loan to him, breached its fiduciary duty by disbursing payments to the builder of Russell's home for incomplete or substandard work. We find, however, that the Bank was not in a fiduciary relationship with Russell and, therefore, affirm the trial court.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

The record shows that, on November 29, 1993, Russell executed an adjustable rate note with a principal amount of $135,000 in favor

of the Bank. Russell intended to use the proceeds of this loan to build his home. Over the next two years, Russell signed numerous agreements modifying the principal amount of his loan, which ultimately reached $155,000.

In his complaint, dated April 3, 1998, Russell alleges that he and the Bank entered into a contract for construction financing as well as the note and a corresponding deed to secure debt. Pursuant to this alleged contract, Russell contends that he was required to choose a builder approved by the Bank, which he did. Thereafter, as construction progressed, the Bank would disburse portions of the principal amount of the construction loan, pursuant to a disbursement schedule, to the builder after its inspector examined work already completed. According to Russell, his approval was also required prior to disbursements being made by the Bank. Russell further alleges that the Bank breached both the contract and a fiduciary duty it owed to him by making disbursements for work which was not properly completed by the builder. Because of these breaches, Russell asked the trial court to enjoin the Bank from foreclosing on his home and to award him compensatory, general, and punitive damages. The trial court correctly refused Russell's request and granted summary judgment to the Bank.

Although Russell sued the Bank for breach of contract in the trial court, he enumerates as error only the trial court's ruling that the Bank owed no fiduciary duty to him. Therefore, the breach of contract claim is not before us in this action, and we consider only whether the Bank can be held liable for a breach of any fiduciary duty owed to Russell.

Russell provides no basis for finding that the Bank owed him any fiduciary duty to ensure the quality of the builder's work before making disbursements.

> Confidential relations are defined as those relationships, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc. OCGA § 23-2-58. There is no confidential relationship between a bank and its customers merely because the customer had advised with, relied upon, and trusted the bankers in the past. The same is true of the relationship between savings and loan associations and their customers. *There is, moreover, particularly no confidential relationship between*

> *lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests.*

(Citations and punctuation omitted; emphasis supplied.) *Pardue v. Bankers First Fed. Sav. &c. Assn.*, 175 Ga. App. 814, 815 (334 SE2d 926) (1985).

There can be no doubt that, as borrower and lender, the interests of Russell and the Bank were opposite in this case. To the extent that the Bank may have been monitoring the work of the builder prior to disbursements, Russell has provided this Court with no evidence contravening the logical conclusion that the Bank participated in such surveillance to protect interests in its collateral. To that end, this case is similar to those in which a borrower sues his lender for failing to notify him of faulty construction.

> [O]rdinarily, an action for damages for faulty construction and incidents thereto, by a homeowner or purchaser against a lending or financing authority, will not lie because the lender's customary participation, the inspection, is normally not made for the benefit of the homeowner, but is made instead for the protection and benefit of the lender. An exception has been recognized when the lender's financing activity extends beyond that of a conventional construction lender. If any exception to this rule is made, it will have to be based on some clear promise of the lender to perform certain protective functions, and upon a clear and distinct participation in the activity which resulted in the damage. It is certainly not enough to make general allegations that the lender inspected the work, since such inspections are presumed to be for its own financial purposes and are not intended to ensure a quality of work. The lender is not an insurer of the work of the contractor, unless clear promises appear to the contrary.

(Citations and punctuation omitted.) *Decoudreaux v. Mut. Fed. Sav. &c.*, 216 Ga. App. 503, 504-505 (1) (455 SE2d 88) (1995). As Russell can point to no evidence showing such clear promises by the Bank, his claim that the Bank owed him a fiduciary duty regarding the construction of his home is untenable.

Furthermore, we must point out that there is no copy in the record of a construction financing agreement between Russell and the Bank. And, although Russell has attached an unsigned agreement to his appellate brief, it is not a part of the record and cannot be considered as evidence. The Bank, however, in its answer to Russell's complaint, has admitted that such a contract existed which indeed had a disbursement schedule for payments to Russell's builder. The

Bank further admitted that disbursements were not made in strict accordance with this schedule. Therefore, viewing the evidence in Russell's favor, we can conclude the existence of a construction financing agreement with which the Bank did not strictly comply. We cannot, on the other hand, accept the remainder of Russell's assertion regarding the terms and breach of this contract for, without any copy of the contract, there is absolutely no evidence to support Russell's claims. For this reason alone, the trial court properly granted summary judgment to the Bank.

Moreover, throughout the construction of his home, Russell continuously signed agreements modifying his original note. In each modification agreement, Russell made the following covenant: "There are no defenses, set-offs, counterclaims, cross-actions or equities to or against the enforcement of the loan documents executed in connection with the loan." As such, Russell must be held to his assertions in these modification agreements, and he is estopped from arguing to the contrary on appeal. And though Russell argues to the contrary,

> [t]here are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby. *Hudson v. Windholz*, 202 Ga. App. 882, 887 (3) (416 SE2d 120) (1992). See also *Thomas v. Eason*, 208 Ga. 822, 827 (2) (69 SE2d 729) (1952); *Van Den Berg v. Northside Realty Assoc.*, 172 Ga. App. 591, 592 (2) (323 SE2d 839) (1984). None of plaintiff['s] assertions constitutes any exception to this rule.

(Citations and punctuation omitted.) *Williams v. Fortson, Bentley &c.*, 212 Ga. App. 222, 223 (1) (a) (441 SE2d 686) (1994).

Thus, for all of the reasons set forth above, the trial court appropriately granted the Bank's motion for summary judgment in this case.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED DECEMBER 7, 1999 —
RECONSIDERATION DENIED DECEMBER 23, 1999 —

*Saia & Richardson, Joseph J. Saia*, for appellant.
*Miller & Martin, William A. DuPre IV*, for appellees.